# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MANRIQUEZ, | CASE NO. 1:09-cv-00456-OWW-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | (Doc. 16) |
| J. HUCHINS, et al., | OBJECTIONS DUE WITHIN 30 DAYS |
| Defendants. | |

Plaintiff Daniel Manriquez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On December 7, 2009, Defendants J. Huchins, J. Reynoso, M. Hacker, R. Roberson, C. Munoz, D. Daley, R. Perez, Paz, C. Morse, Omos, and Clausings ("Defendants") filed a motion to dismiss. (Doc. #16.) Defendants argue that they are entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's complaint fails to state a claim upon which relief can be granted under Section 1983. On February 1, 2010, Plaintiff filed an opposition to Defendants' motion to dismiss. (Doc. #23.) On February 17, 2010, Defendants filed a reply to Plaintiff's opposition. (Doc. #26.)

**I    Background**

    **A.    Plaintiff's Complaint**

This action proceeds on Plaintiff's complaint filed on March 11, 2009. (Doc. #1.) Plaintiff is suing Defendants under Section 1983 for the violation of Plaintiff's rights under the Eighth Amendment. Plaintiff alleges that on February 28, 2007, he refused to relinquish his food tray,

1  covered up his cell door, and refused to cuff up.¹ (Compl. 4.²) Plaintiff claims that he did not pose
2  a threat to anyone or pose a threat to damage any property. (Compl. 4.) Nonetheless, Defendants
3  Hutchins and Reynoso ordered their subordinates to use physical force to extract Plaintiff from his
4  cell. (Compl. 4.) Defendants Munoz, Clausings, and Omos sprayed Plaintiff's cell with a chemical
5  similar to pepper spray. (Compl. 4.) Plaintiff claims that Hutchins, Reynoso, Hacker, and Roberson
6  supervised Munoz, Clausings, and Omos during the incident. (Compl. 4.) Plaintiff experienced
7  overwhelming pain from the chemical. (Compl. 4.) Plaintiff uncovered his cell door and windows
8  and voluntarily removed his clothing so that he could be searched, restrained, and removed from his
9  cell. (Compl. 4.)

10      Plaintiff alleges that Defendants Morse, Clausings, Omos, Munos, and Daley did not remove
11  Plaintiff from his cell and instead deliberately prolonged Plaintiff's pain by refusing to remove
12  Plaintiff from his cell and "seeing certain body parts [such as his genitals underarms and feet]
13  slowly." After restraints were placed on Plaintiff, "each defendant"³ prolonged Plaintiff's pain by
14  "waiting until Defendant Perez put leg restraints on Plaintiff" before removing Plaintiff from his cell.
15  (Compl. 5.)

16      Plaintiff was then decontaminated by Defendants Paz and Morse who "simply just ran water
17  on Plaintiff." (Compl. 5.) Defendants did not decontaminate Plaintiff's cell and put Plaintiff back
18  in his cell which was still drenched with the chemical. (Compl. 5.) Plaintiff began choking and
19  experienced burning in his eyes and body from the chemical. (Compl. 5.) Plaintiff claims that
20  Defendants Paz, Morse, Clausings, Daley, Perez, Omos, made no effort to decontaminate Plaintiff's
21  cell. (Compl. 5.) Plaintiff alleges that Defendants Hacker, Roberson, Reynoso, Hutchins, and
22  Munoz ordered Plaintiff to be placed in his contaminated cell knowing that Plaintiff would suffer

---

¹There is no explanation as to why Plaintiff refused to give up his food tray, why he covered his cell door or what he covered it with, or why he refused to cuff up.

²Citations to Plaintiff's complaint refer to the page numbers as electronically docketed. The page numbering used by Plaintiff differs from the page numbers as electronically docketed because Plaintiff numbered the pages of his form complaint, the first two pages as electronically docketed, separately from the body of his complaint.

³Plaintiff alleges "each defendant" prolonged his pain. Presumably, Plaintiff means "each defendant" that was present at the time, as opposed to "each defendant" named in this lawsuit.

2

pain from the chemical.

Plaintiff also alleges that Hacker, Roberson, Reynoso, Hutchins, and Munoz ordered that Plaintiff be deprived of tooth paste, a tooth brush, soap, toilet paper, clothing, bedding, and a mattress. Plaintiff was not provided with cleaning supplies to clean the chemical, or clothing other than Plaintiff's "chemically drenched underwear." (Compl. 5-6.)

### B.     Defendants' Motion to Dismiss

Defendants move for dismissal on the ground that Plaintiff's allegations do not state a claim for relief under Section 1983. Defendants also argue that the Eleventh Amendment bars liability against Defendants in their official capacities, that Plaintiff's claims against Defendants Hutchins and Reynoso are not cognizable because there is no respondeat superior liability under Section 1983, and that Defendants are entitled to qualified immunity. Defendants also state that in the event that the Court denies Defendants' motion to dismiss, Defendants request for a more definite statement of Plaintiff's claims under Federal Rule of Civil Procedure 12(e).

Defendants argue that Plaintiff fails to state a claim for the use of excessive force because Plaintiff has admitted to causing disorder by failing to relinquish his food tray and by covering his cell door and windows. (Notice of Mot. and Mot. to Dismiss First Am. Compl. or in the Alternative, for a More Definite Statement; Mem. of P. & A. in Supp. Thereof 10:2-6.[4]) Defendants contend that the amount and type of force used was appropriate in light of the circumstances. (Mot. to Dismiss 10:6-10.) Defendants also argue that Plaintiff has only alleged a "de minimis injury" which is not serious enough to warrant protection under the Eighth Amendment. (Mot. to Dismiss 10:11-13.) Defendants also argue that the disturbance caused by Plaintiff could have resulted in a significant threat to the safety and security of the correctional officers and other inmates and that Plaintiff was decontaminated prior to being returned to his cell, "appropriately neutralizing any harm that might have been caused by the pepper-spray like substance." (Mot. to Dismiss 10:13-20.)

Defendants contend that Plaintiff fails to state a claim for the use of excessive force because

---

[4] Citations to Defendants' motion to dismiss refer to the page numbers as electronically docketed. The page numbering used by Defendants differs from the page numbers as electronically docketed because Defendants separately numbered the table of contents in their motion.

3

the facts alleged do not support the conclusion that Defendants acted with deliberate indifference. (Mot. to Dismiss 11:12-16:26.) Defendants argue that Plaintiff has failed to plead facts suggesting deliberate indifference because "[a]t most, plaintiff offers his own subjective interpretations of the officers' conduct in delaying his removal from the cell but pleads no criminally reckless behavior on the part of the officer-defendants. . . ." (Mot. to Dismiss 13:19-23.) Defendants characterize Plaintiff's allegations as "exaggeration," and argue that when viewed in light of the totality of the circumstances, Defendants' actions "were an instantaneous reaction to the plaintiff's aggressive behavior, not deliberate indifference . . . ." (Mot. to Dismiss 15:8-18.)

Defendants also contend that Plaintiff's allegations against Defendants Hutchins and Renyoso are insufficient because there is no allegation that Hutchins or Reynoso were deliberately indifferent and that Plaintiff is attempting to hold them vicariously liable for the conduct of their subordinates. (Mot. to Dismiss 17:6-12.) Defendants argue that Plaintiff has not alleged that Hutchins or Reynoso implemented a policy repugnant to the constitution that caused the alleged constitutional violations, personally participated in the alleged violations, or knew about the violations and failed to prevent them. (Mot. to Dismiss 17:19-18:8.)

Finally, Defendants argue that Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment and Defendants are entitled to qualified immunity because their actions did not violate clearly established constitutional law. (Mot. to Dismiss 19:14-21:15.)

On February 1, 2010, Plaintiff filed an opposition arguing that his complaint does state sufficient facts to support a claim under Section 1983. (Doc. #23.) Defendants filed a reply on February 17, 2010. (Doc. #26.)

**II.   Discussion**

Defendants argue that they are entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's complaint fails to state a claim upon which relief can be granted under Section 1983. When ruling on a motion to dismiss under Rule 12(b)(6), "[a]ll allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party." Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) (citing Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). However,

1  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to
2  dismiss." Id. "Dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-
3  movant can prove no set of facts to support its claims." Id. If matters outside the pleadings are
4  considered, a motion to dismiss under Rule 12(b)(6) is treated as one for summary judgment under
5  Rule 56. Federal Rule of Civil Procedure 12(d); Olsen v. Idaho State Bd. of Med., 363 F.3d 916,
6  921-22 (9th Cir. 2004)).

7       To survive a motion to dismiss for failure to state a claim, a complaint must meet the
8  pleading standard set by Federal Rule of Civil Procedure 8. Under Rule 8(a), a complaint must
9  contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.
10 R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual
11 allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me
12 accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.
13 Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter,
14 accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550
15 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's
16 liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id.
17 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual
18 allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.
19 Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
20 statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

21     **A.**    **Eighth Amendment Claims**

22      Defendants contend that Plaintiff's complaint fails to state a claim for the violation of his
23 rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and
24 unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards,
25 humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop,
26 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two
27 requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and
28 (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind."

Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Where prison officials are accused of using excessive physical force, "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley v. Albers, 475 U.S. 312, 321 (1986). Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

### 1. Use of Excessive Force

Defendants raise a number of arguments in support of their contention that Plaintiff has failed to state a claim based on the use of excessive force. Defendants argue that (1) Plaintiff created a

disturbance that justified the use of force, (2) the type and degree of force used was appropriate, (3) Plaintiff has only suffered "de minimis injury," (4) the disturbance caused by Plaintiff was significant enough to justify the use of force, and (5) that Plaintiff was ultimately decontaminated by Defendants Paz and Morse.

Defendants' first, second, and fourth arguments all relate to the issue of whether Defendants' response was appropriate in light of Plaintiff's admitted disobedience. First, Defendants argue that Plaintiff created a disturbance that justified the use of force by refusing to relinquish his food tray, covering his cell doors and windows, and refusing to submit to restraints. Second, Defendants argue that the type and degree of force used was proportionate to the need for the use of force. Defendants' fourth argument is that the disturbance caused by Plaintiff was significant enough to justify the use of force.

Defendants' arguments are not supported by the allegations in Plaintiff's complaint when construed in the light most favorable to Plaintiff. Although Plaintiff admits to being disobedient, he also alleges that he did not pose a threat to other correctional officers or to any property. The Court will not conclude at the pleading stage that Plaintiff's disobedience justified the use of the pepper spray-like chemical substance. Further, Plaintiff has alleged facts that raise serious questions regarding whether Defendants' response was appropriate. Plaintiff alleges that Defendants deliberately delayed the extraction of Plaintiff from his cell after Plaintiff submitted to restraints in order to sadistically expose Plaintiff to the burning effects of the chemical. Plaintiff alleges that the extraction itself was done in a malicious and sadistic manner by unnecessarily instructing Plaintiff to expose his genitals and other body parts for inspection[5] and conveying pointless, time consuming demands before Plaintiff was removed from his cell.[6] Plaintiff further alleges that Defendants

---

[5] Plaintiff alleges that Defendants' demands to see certain body parts, such as his genitals, underarms, and feet, were unnecessary. Defendants may dispute Plaintiff's conclusion regarding the necessity of the inspections, but any dispute would rely on matters outside the pleadings, which would be inappropriate at this stage in litigation.

[6] Plaintiff describes an exchange where Defendants asked to see the bottom of Plaintiff's feet before they extracted him. Plaintiff picked up his left foot first and Defendant Daley responded by saying "No I said right foot, not left foot." (Compl. 4-5.) Plaintiff contends it made no difference because both feet were in plain sight. The inference from Plaintiff's allegations is that Daley was merely playing games with Plaintiff in a sadistic effort to keep Plaintiff exposed to the chemical agent.

7

deliberately failed to decontaminate Plaintiff's cell before placing Plaintiff back into the cell. Defendants then deprived Plaintiff of hygiene items such as clothing, soap, toilet paper, a tooth brush, and bedding, which Plaintiff alleges was a calculated effort to expose Plaintiff to the painful effects of the chemical agent. Even if Plaintiff's disobedience justified some use of force, Plaintiff's allegations plausibly support the conclusion that the degree of force used went far beyond that which would be justifiable under Eighth Amendment standards.

Defendants' third argument is that Plaintiff has only suffered a "de minimis injury" that does not rise to the level of an Eighth Amendment violation. Defendants misconstrue the law. Plaintiff's failure to allege substantial or long-term injury is not fatal to his Eighth Amendment claim. See Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (core judicial inquiry is not whether a certain quantum of injury was sustained, but whether force was applied in a malicious and sadistic manner). It is de minimis uses of physical force that is excluded from recognition under the Eighth Amendment, not de minimis injuries: "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S. Ct. at 1178-79.

Here, the use of the pepper spray-like chemical agent is alleged to be clearly malicious and sadistic. The use of the chemical agent was not de minimis, particularly in light of the brazenly sadistic deprivation of personal hygiene items.

Finally, Defendants argue that Plaintiff was decontaminated by Paz and Morse, effectively "neutralizing any harm that might have been caused by the pepper-spray like substance." (Mot. to Dismiss 10:16-18.) Paz and Morse's actions do not negate the potential liability for the alleged constitutional violations. Defendants have cited no authority to support their position that prison officials are not liable for the use of excessive force if they provide treatment for the force after inflicting the force. The decontamination does not negate the inference that Defendants acted sadistically and maliciously by purposefully exposing Plaintiff to the chemical agent for an extended period of time. Plaintiff has alleged sufficient facts to support the plausible conclusion that the use of the chemical agent was excessive by Eighth Amendment standards.

### 2. Deliberate Indifference

Defendants also argue that Plaintiff has not alleged that Defendants acted with deliberate indifference. Defendants contend that "[t]here was no known risk to inmate health or safety of which the officers were aware of and consciously disregarded." (Mot. to Dismiss 13:17-19.) The claim that Defendants were somehow unaware of the substantial pain and discomfort caused by the chemical agent they sprayed into Plaintiff's cell is not plausible. While use of the chemical agent may be justified in certain scenarios, the allegation that Defendants deliberately forced Plaintiff to wallow in the chemically drenched cell while Defendants maliciously delayed his extraction by slowly asking Plaintiff to expose certain body parts and make pointless demands regarding the order in which Plaintiff shows them clearly falls within the realm of deliberate indifference. Plaintiff then describes how Defendants sadistically confiscated Plaintiff's personal hygiene items, leaving Plaintiff unable to clean himself while in the chemically contaminated cell. The Court is unable to conclude that Defendants' subjective state-of-mind while engaging in this type of activity was anything other than sadistic and malicious.

Defendants argue that Plaintiff is merely "attempt[ing] to transform by exaggeration, a short-lived event into a deliberate indifference claim." (Mot. to Dismiss 15:8-10.) To the extent that Plaintiff is exaggerating, it is Defendants' obligation to prove the exaggeration through extrinsic evidence on a motion for summary judgment or at trial. Plaintiff has met the pleading standard for the purposes of defeating a motion to dismiss. Plaintiff's conclusion that Defendants acted with deliberate indifference is plausibly supported by the factual allegations. Plaintiff's allegations are sufficient to state a claim for deliberate indifference in violation of the Eighth Amendment.

### B. Claims Against Defendants Hutchins and Reynoso

Defendants argue that Plaintiff cannot hold Defendants Hutchins and Reynoso vicariously liable for the actions of their subordinates. Defendants argue that Plaintiff's allegations do not demonstrate that Hutchins or Reynoso acted with deliberate indifference. Defendants contend that Hutchins or Reynoso did not implement a policy repugnant to the Constitution that was the moving force behind any constitutional violations, did not personally participate in any alleged constitutional violation, and did not know about any constitutional violations and failed to act to prevent them.

Defendants argue that Plaintiff is merely attempting to hold Hutchins and Reynoso liable as supervisors responsible for overseeing the operations of prison staff.

Plaintiff alleged that Hutchins and Reynoso directed Munoz, Clausings, and Omos to spray the chemical agent into Plaintiff's cell. Plaintiff also alleges that Hutchins and Reynoso failed to order their subordinates to decontaminate Plaintiff's cell before Plaintiff was placed in it "knowing Plaintiff would suffer unbearable pain given that the chemicals were all over the bunks, floors, & walls, and hence dripping on Plaintiff's bearly[sic] clothed body." (Compl. 5.) Hutchins and Reynoso also ordered that Plaintiff be deprived of his personal hygiene items and refused to provide Plaintiff with supplies to clean the chemical agent in his cell. In Lolli v. County of Orange, 351 F.3d 410, 418, (9th Cir. 2003), the Ninth Circuit stated that a supervisor's "order to use the pepper spray against an allegedly complaint [detainee] is sufficient involvement in [an] alleged constitutional violation." Plaintiff's allegations regarding Hutchins and Reynoso's orders are sufficient to support an Eighth Amendment claim against them on the theory that they personally participated in the violation of Plaintiff's constitutional rights.

### C. Eleventh Amendment Immunity

Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. Plaintiff indicates that he is suing Defendants in both their individual and official capacities. (Compl. 3.) Defendants correctly argue that Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment. Plaintiff's claims against Defendants in their official capacities are treated as claims against the state of California. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). State officials sued in their official capacities are not "persons" within the meaning of Section 1983 and are generally not liable. Id.; Doe v. Lawrence Livermore National Laboratory, 131 F.3d 836, 839 (9th Cir. 1997). There is a limited exception to this general rule that permits suits for prospective injunctive relief against a state official in his/her official capacity. See Lawrence Livermore National Laboratory, 131 F.3d at 839 (citing Ex parte Young, 209 U.S. 123 (1908)). However, Plaintiff has not alleged a continuing constitutional violation and therefore is not requesting any prospective injunctive relief. Plaintiff is requesting compensatory relief for a constitutional violation that occurred in the past.

Thus, Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment.

However, Plaintiff's claims against Defendants in their personal or individual capacities are still viable. The Eleventh does not bar damages suits against state officials sued in their individual or personal capacities under Section 1983. Hafer v. Melo, 502 U.S. 21, 30-31 (1991).

### D. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because a reasonable prison official would not have known that Defendants' conduct was unlawful under clearly established law. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Questions regarding qualified immunity should be resolved at the earliest possible stage in litigation because qualified immunity serves as an immunity from suit rather than a mere defense to liability. Id.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving claims of qualified immunity. First, a court must decide whether the facts alleged by a plaintiff set forth a violation of a constitutional right. Saucier, 533 U.S. at 201. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. If the defendant did not violate a clearly established constitutional right, the defendant is entitled to qualified immunity from plaintiff's claims. Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, the Supreme Court has since held that the Saucier sequence is not mandatory in all cases and courts may resolve the "clearly established" question first when the Saucier sequence would result in a "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Id. at 818.

The Court finds that the right asserted by Plaintiff to be free from the deliberately indifferent use of pepper spray-like chemicals was clearly established at the time of defendant's alleged misconduct. The incident in question allegedly occurred on February 28, 2007. By that time, Farmer v. Brennan, 511 U.S. 825, 828 (1994) ("prison officials' 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment"), Hudson v. McMillian, 503 U.S. 1, 6 (1992) (malicious and sadistic use of force to inflict unnecessary and wanton pain violates the Eighth Amendment), and Whitley v. Albers, 475 U.S. 312, 320 (1986) (same) had all been decided.

The Ninth Circuit has held that the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for the violation of the Eighth Amendment. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002). The Ninth Circuit concluded that the right at issue was clearly established. Id. at 906. The Ninth Circuit has also held that a supervisor's order to use pepper spray against an allegedly complaint prisoner is sufficient to state an Eighth Amendment claim. Lolli, 351 F.3d at 418. The Ninth Circuit also held that a prisoner's allegation that prison officials pepper sprayed prisoner six times with 7-8 second bursts in response to the prisoner's refusal to turn over his food tray was sufficient to state a claim under the Eighth Amendment. Vlasich v. Reynoso, 117 Fed. Appx. 568, 570 (9th Cir. 2004).[7] The Court finds that the law prohibiting the excessive use of pepper spray and pepper spray-like chemicals was clearly established at the time of the incidents alleged in Plaintiff's complaint. Thus, Defendants are not entitled to qualified immunity.

### E. Motion for More Definite Statement

Defendants argue that in the event that the Court does not dismiss Plaintiff's claims, Defendants move for a more definite statement under Federal Rule of Civil Procedure 12(e). Rule 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

---

[7] In determining whether a right was clearly established for qualified immunity purposes, the Court may look at unpublished decisions. Prison Legal News v. Lehman, 397 F.3d 692, 701-702 (9th Cir. 2005).

Defendants state that they:

> seek clarification of plaintiff's claims against each and every defendant in both their individual and official capacities to expedite both discovery and law and motion. A reading of the complaint, especially with regard to the third and fourth causes of action indicates that the complaint is ambiguous and confusing in terms of what legal claims plaintiff is proceeding.

(Mot. to Dismiss 22:3-7.) The Court will deny Defendants' motion. The Court acknowledges that Plaintiff's pro se pleading is organized in a slightly confusing manner. Plaintiff delineates his claims into four separate causes of actions, "excessive force," "unnecessary prolonging of pain," "hazardous living conditions," and "life's basic necessities." (Compl. 6-9.) Conceptually, Plaintiff is attempting to raise separate causes of action for Defendants' decisions: (1) to utilize the chemical agent, (2) to delay Plaintiff's extraction from his cell, (3) to place Plaintiff back in the cell without decontaminating it, and 4) to deprive Plaintiff of certain personal hygiene items, clothing, and bedding to exacerbate his exposure to the chemical agent. Whether Plaintiff's allegations are construed as four separate "causes of action" or as a single "cause of action" has little practical significance, as either way, Plaintiff has alleged sufficient facts to satisfy the federal pleading requirements. Plaintiff is suing Defendants for the violation of his rights guaranteed by the Eighth Amendment stemming from an incident involving the use of a pepper spray-like chemical agent that allegedly occurred on February 28, 2007.

Plaintiff's complaint has pleaded sufficient facts to provide Defendants with fair notice of Plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007). Further, Plaintiff is proceeding pro se and his pleading is to be liberally construed and is held to less stringent standards than formal pleadings drafted by lawyers. Id. The Court will recommend that Defendants' motion for a more definite statement be denied.

### III. Conclusion and Recommendation

The Court finds that Plaintiff's complaint states a claim for relief under Section 1983 for the violation of Plaintiff's rights under the Eighth Amendment. Plaintiff has alleged that the force used by Defendants was clearly excessive in light of the circumstances and that Defendants acted with deliberate indifference. The Court also finds that Plaintiff has alleged sufficient facts to state a claim

against Defendants Hutchins and Reynoso for their personal involvement in the alleged constitutional violations. The Court finds that the conduct alleged violated clearly established law and that Defendants are not entitled to qualified immunity. The Court finds that Defendants are not entitled to a more definite statement of Plaintiff's claims. Finally, the Court finds that Plaintiff's claims, to the extent that they can be construed as suing Defendants in their official capacities, should be dismissed and that this action should proceed against Defendants only in their individual/personal capacities.

Accordingly, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss, filed on December 7, 2009, should be PARTIALLY GRANTED and PARTIALLY DENIED;

2. Plaintiff's claims against Defendants in their official capacities should be DISMISSED;

3. This action should proceed on Plaintiff's Eighth Amendment claims against Defendants in their individual/personal capacities; and

4. Defendants' motion for a more definite statement under Rule 12(e) should be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 13, 2010**                    **/s/ Sheila K. Oberto**
                                                             UNITED STATES MAGISTRATE JUDGE