# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DANIEL MANRIQUEZ,

               Plaintiff,

    v.

HUCHINS, et al.,

               Defendants.

_____/

CASE NO. 1:09-cv-00456-LJO-BAM PC

FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

(ECF Nos. 191, 192, 193, 194, 206, 209, 210, 211, 212, 218, 227, 228)

OBJECTIONS DUE WITHIN THIRTY DAYS

**Findings and Recommendations on Plaintiff's Motion for Summary Judgment**

**I.**    **Procedural History**

      Plaintiff Daniel Manriquez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on the second amended complaint filed November 11, 2011, against Defendants Munoz, Clausing, and Omos for excessive force in pepper spraying Plaintiff in violation of the Eighth Amendment; Defendants Hutchins, Reynoso, Hacker, and Roberson for ordering that Plaintiff's property be removed from his cell and that Plaintiff be placed back into a contaminated cell without means to decontaminate from the pepper spray; and Defendants Morse and Paz for placing Plaintiff in the contaminated cell.  (ECF No. 180.)

      On April 26, 2012, Plaintiff filed a motion for summary judgment, statement of undisputed facts, declaration in support of his motion, and request for judicial notice.  (ECF Nos. 191-194.)  On June 14, 2012, Defendants filed an opposition to the motion for summary judgment, declaration of

1

Defendant Hacker, statement of disputed facts, response to Plaintiff's statement of undisputed facts, and objections to Plaintiff's motion for summary judgment.  (ECF Nos. 202-206.)  On June 27, 2012, Defendants filed an amended opposition to the motion for summary judgment, amended declaration of Defendant Hacker, amended statement of disputed facts, and amended response to Plaintiff's statement of undisputed facts to Plaintiff's motion for summary judgment.[1]  (ECF Nos. 209-212.)

On July 9, 2012, Plaintiff filed evidentiary objections to Defendants' evidence submitted in support of the opposition to the motion for summary judgment, declaration in support of his motion, and opposition to Defendants' objections to evidence submitted in support of the motion for summary judgment.  (ECF No. 216-218.)  On July 30, 2012, Plaintiff filed a motion to file a supplemental exhibit in support of his motion for summary judgment.  (ECF No. 229.)  On July 31, 2012, Plaintiff filed a reply to Defendants' opposition to the motion for summary judgment, and objections to the amended evidence submitted in support of Defendants' opposition.  (ECF No. 227, 228.)  Defendants filed an opposition to Plaintiff's motion to file a supplemental exhibit on August 24, 2012, and Plaintiff filed a reply on September 10, 2012.  (ECF Nos. 233, 236.)

## II.    Relevant Second Amended Complaint Allegations

On February 28, 2007, while housed in the Administrative Segregation Unit ("ASU"), Plaintiff and other inmates engaged in a protest against prison officials.  (Sec. Am. Compl. ¶ 9, ECF No. 174.)  Plaintiff covered his cell window with paper, refused to relinquish his food tray, and refused to cuff up.  (Id. at ¶ 10.)  The inmates informed prison officials that the protest would not turn violent if the officials would agree to address their complaints.  (Id. at ¶ 11.)

Defendants Huchins and Reynoso refused to address the inmates' complaints and ordered that the X10 Barricade Removal Device be used to extract inmates from their cells.  (Id. at ¶ 12.)  Defendants Hutchins, Reynoso, Hacker, and Roberson ordered an extraction team to extract the inmates from their cells, and that inmates be housed back in the contaminated cells.  (Id. at ¶ 15.)

---

[1] An order issued striking Defendants' opposition to the motion for summary judgment, declaration of Defendant Hacker, statement of disputed facts, response to Plaintiff's statement of undisputed facts, and Plaintiff evidentiary objections and declaration in support on November 2, 2012.  (ECF No. 244.)

Defendants Munoz, Paz, Morse, Omos, and Clausing, and officers Daley and Perez approached Plaintiff's cell. Defendants Munoz, Clausing, and Omos sprayed a seven to eight second burst of pepper spray into Plaintiff's cell rather than the one to three second burst that was administered to most inmates. (Id. at ¶ 18.)  As the pepper spray entered the cell, Plaintiff began gagging and choking, and experienced lung and chest pain. Plaintiff then uncovered his cell window and removed his clothing so he could be searched and decontaminated. (Id. at ¶ 19.)

Plaintiff was removed from his cell and turned over to the decontamination team, Defendants Paz and Morse, and Officers Henrichsen, and Lanlger. Defendants Paz and Morse decontaminated Plaintiff by rinsing him with water for several minutes. (Id. at ¶ 26-27.) While Plaintiff was being decontaminated, Defendants Munoz, Omos, and Clausing, and Officers Perez, and Daley followed the order of Defendants Huchins, Reynoso, Hacker, and Robertson to remove all property from Plaintiff's cell. (Id. at ¶ 33.) Defendants Paz and Morse placed Plaintiff back in the contaminated cell. (Id. at ¶ 37.) Defendants Reynoso, Hacker, Roberson, and Hutchins stood by and allowed Plaintiff to be placed back in the contaminated cell. Plaintiff was left in the contaminated cell for ten days causing pain from being exposed to the chemicals. (Id. at ¶ 38.)

## III.   Summary Judgment Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. <u>Simmons v. Navajo County, Arizona</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

## IV.   **Evidentiary Objections**

Defendants bring seventy two objections to Plaintiff's evidence in support of the motion for summary judgment and Plaintiff responds with thirty nine objections to Defendants evidence in opposition to the motion for summary judgment. (ECF Nos. 206, 216.) Many of the objections brought by both parties address evidence that is irrelevant in deciding the disputed issues here. Accordingly, the Court will only address the objections to the relevant evidence considered by the Court in deciding Plaintiff's motion for summary judgment.

### A.   **Inmate Declarations**

In support of his motion for summary judgment, Plaintiff submits the declaration of inmates David Vasquez, Jack Morris, Mark Torres, and Cesar Molina regarding their experience of being pepper sprayed or involved in a peaceful protests and the actions taken by prison officials in response. Defendants object to the declarations of these witnesses on the grounds they are not qualified to provide expert testimony. None of these inmates were involved in the incident that is at issue here. They were not eye or ear witnesses, and the witnesses have set forth their opinion of the proper procedures to be used by CDCR officials to deal with situations such as are at issue here.

There are two types of opinion testimony, lay witness testimony or expert witness testimony.

The testimony of a lay witness "opinion is limited to one that is: a) rationally based on the witness's perception; b) helpful to clearly understanding the witnesses testimony or to determining a fact in issue; and c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay witness testimony generally summarizes first-hand sensory observations and "is not to provide specialized explanations or observations that an untrained layman could not make if perceiving the same acts or events." United States v. Conn, 297 F.3d 548, 554 (7th Cir. 2002) (quoting United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001)); see Hanger Prosthetics &Orthopedics, Inc. v. Capstone, Orthopedic, Inc., No. 2:06-cv-02879-GEB-KJM, 2008 WL 2441067, at *2 (E.D.Cal. June 13, 2008) ("The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (internal punctuation and citations omitted). Since the testimony of these witnesses is not based on a first hand knowledge of the facts of this case, but is applying the facts to specialized knowledge that a lay person would not possess, the Court concludes that the testimony does not qualify as lay opinion testimony. Conn, 297 F.3d at 554.

An opinion regarding the proper prison procedures to be followed in dealing with inmates that are refusing to comply with orders, in decontaminating a prison cell following chemical extraction, and the manner in which discipline is imposed and personal belongings are distributed to the inmates following the extraction is beyond that of the lay witness. The opinion testimony requires "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. While these inmates state they have personal experience due to their individual experiences while incarcerated, such testimony is insufficient to qualify them as an expert in prison administration or pepper spray. Accordingly, Defendants' objections are sustained and the declarations of inmates David Vasquez, Jack Morris, Mark Torres, and Cesar Molina shall be disregarded.

### B.    Incident Reports

Defendants object to the crime incident reports prepared by correctional officers on the grounds that the contents of the reports are inadmissible hearsay. "Hearsay is inadmissible on

summary judgment to the same extent it would be at trial, as is testimony not based on the affiant's personal knowledge of the events detailed in the declaration." Tracchia v. Tilton, No. CIV S-06-2916 GEB KJM P, 2009 WL 3055222, at *3 (E.D.Cal. Sept. 21, 2009).  "An objection based on hearsay inherently is bound to the context in which the allegedly objectionable evidence is offered." Sanchez v. Penner, No. CIV S-07-0542 MCE EFB P, 2009 WL 3088331, * 5 (E.D.Cal. Sept. 22, 2009)**.**

Hearsay is an out of court statement that a party offers for the truth of the matter asserted. Fed. R. Evid. 801(c).  A statement made by a party that is offered by the opposing party is not hearsay.  Fed. R. Evid. 801(d)(2)(A).  The contents of the reports prepared by Defendants Hacker, Roberson, Munoz, Paz, Morse, Omos, and Clausing are not hearsay, and Defendants' objection is overruled on this ground.

### C.    Operating Instructions and Material Safety Data Sheet

Defendants object to the operating instructions for the X10 extension device (Exhibit II), Novus material safety data sheet, (Exhibit JJ), and Sabre material safety data sheets (Exhibits KK and LL) on the grounds that the documents are hearsay.  Plaintiff submits these exhibits with a declaration stating they were turned over by Defendants during discovery.  Plaintiff also argues that these documents are admissible under Federal Rule of Evidence 803(6).

Plaintiff is attempting to submit these documents for the truth of the matter asserted and they fall within the hearsay rule.  Federal Rule of Evidence 803(6) makes an exception for documents that are made at or near the time of the incident, are kept in the regular course of business, making the record is a regular practice of the activity, and these conditions are shown by the testimony of a qualifying witness.  The documents Plaintiff is attempting to introduce do not meet the exception.  These are not documents created and kept by prison officials in the regular course of business, but documents obtained from outside sources.  The documents are hearsay and Plaintiff has failed to show that any exception to the hearsay rule would apply.  Defendants objection to Exhibits II, JJ, KK, and LL is sustained.

### D.    Defendants' Responsive Pleadings

Plaintiff objects to Defendants' pleadings on the ground that they are not signed. (Plaintiff's

Evidentiary Objections 20,[2] ECF No. 228.)  A review of the pleadings shows that defense counsel signed the documents with an electronic signature.  To the extent that Plaintiff objects to the electronic signature of Defendant Hacker being used on the document, Local Rule 131(f) provides for the use of an electronic signature and Plaintiff's objection is overruled.

Plaintiff further objects that Defendants' amended pleadings were not timely filed. (ECF No. 228 at 19-20.)  Defendant's original pleadings were timely filed on June 14, 2012.  The amended documents, filed less than two weeks later on June 27, 2012, identify the specific changes that were made to the documents.  The Court finds that since Defendants opposition was timely filed, Plaintiff did not suffer any prejudice by the filing of the amended documents and Plaintiff's objection is overruled.

### E.    Declaration of Defendant Hacker

Plaintiff objects to the declaration of Defendant Hacker on the ground that it lacks foundation, contains hearsay, contains facts that were not supplemented during the discovery process, and is a sham declaration.

Plaintiff argues that Defendant Hacker's declaration lacks foundation because it is not based on personal knowledge.  "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  Defendant Hacker states that he supervised the extraction teams on the date in question.  (Hacker Dec. ¶ 3.)  Defendant Hacker attempted to contact the inmates that were refusing to comply with orders and received no response.  (Id. at ¶¶ 4-5.)  Defendant Hacker personally stood outside the cell doors and requested the non-compliant inmates, including Plaintiff, to follow the orders of the correctional officers and observed the cell extractions.  (Id. at ¶ 9-11.)  Defendant Hacker has sufficiently shown that he has personal knowledge of the events addressed in the declarations and Plaintiff's objection due to lack of foundation is overruled.

---

[2]All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

Plaintiff objects to Defendant Hackers' declaration on the basis that it was stated on information and belief.  Defendant Hacker states that prior to the cell extractions a social worker requested that each inmate comply with correctional officers.  This appears to be made on information and belief because Defendant Hacker did not attend the cell extraction of every inmate as there were two extraction teams.  However, it is clear that he observed the cell extractions of some of the inmates and this statement was based on his personal knowledge.  However, those portions of the declaration that involve the decontamination of Plaintiff and his cell, and the issuance of necessities following the cell extraction do not appear to be made on personal knowledge and Plaintiff's objection shall be sustained to those sections of paragraphs 16, 26, and 27 that are asserted on information or belief.

Plaintiff's objections based upon hearsay appear to be directed to the information that was provided to Defendant Hacker regarding the inmates that were refusing to comply.  This information was not presented for the truth of the matter asserted.  See Fed. R. Evid. 801(c)(2).  The statements to which Plaintiff is objecting are offered to show Defendant Hacker's state of mind in making decisions regarding the cell extractions and subsequent action taken by Defendant Hacker.  See Fed. R. Evid. 803(3).  Plaintiff's objection based upon hearsay is overruled.

Plaintiff objects to Defendant Hacker's declaration on the basis that it offers impermissible lay opinion.  Defendant Hacker's statements regarding the use of the X10 BRD cell extraction device, inmate decontamination by cool running water over the course of several minutes, etc. are not a matter of opinion, but are statements of fact.  Plaintiff's objection based on impermissible lay opinion is overruled.

Plaintiff objects to the declaration on the grounds that the declaration contains factual statements that were not disclosed during discovery and Defendant did not supplement his responses.  Plaintiff argues that Defendant Hacker has submitted a sham declaration to create triable issues of fact.  Affidavits or declarations used in support of or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The sham affidavit rule arises when the declarant's declaration contradicts earlier deposition

testimony.  Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009); see Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir. 1991) (holding a court may discount a "sham" declaration that "flatly contradicts" prior deposition testimony, and has been provided for the sole purpose of creating a genuine issue of material fact.)  The underlying rationale of the sham affidavit rule is that a party may not "manufacture a bogus dispute with *himself* to defeat summary judgment."  Davis, 571 F.3d at 928 (emphasis in original).

In this instance, Plaintiff claims that Defendant Hacker has previously stated that he lacks recollection and after reasonable inquiry has been unable to obtain sufficient information to respond to Plaintiff's requests for admissions or interrogatories and now is asserting, on information and belief, that Plaintiff's cell was decontaminated and he was issued personal items pursuant to policy. While Plaintiff argues that Defendants have admitted that his cell was not decontaminated, a review of the documents submitted in support of his declaration show no such admission.

Specifically in regards to Defendant Hacker, Plaintiff requested that Defendant Hacker admit that he "failed to order officers and the extraction team to clean and decontaminate the cell of the chemical agent."  (ECF No. 191 at 55, Defendant Hacker's Responses to Plaintiff's Request for Admissions, Set One, Request for Admission No. 65.)  Defendant responded in relevant part, "Admit.  I do not make orders for specific post-cell extraction procedures."  (Id.)  Similarly, Plaintiff requested Defendant Hacker to "[a]dmit that under your supervision and direction plaintiff was placed back into the contaminated cell."  (Id., Request for Admission No. 66.)  Defendant Hacker responded in relevant part, "Deny.  I do not make orders for specific post-cell extraction procedures." (Id.)  Plaintiff received a similar response to his requests for admissions regarding being provided supplies following the cell extraction.  (See Id. at 56, Request for Admission No. 74 and 75.)  A review of the discovery documents reflects similar requests and responses from the additional defendants.

Defendant Hacker's admission that he does not make orders for specific post extraction procedures does not contradict his statement that on information and belief the post extraction procedures were followed, Plaintiff's cell was decontaminated and he was provided supplies in compliance with the procedure.  The Court does not find that the affidavit submitted by Defendant

Hacker is a sham affidavit and Plaintiff's objection on that ground is overruled.

Further, to the extent that Plaintiff objects because Defendants did not supplement their discovery responses, Plaintiff has failed to show that any response from Defendant Hacker needed to be supplemented.  While Plaintiff appears to complain because Defendant Hacker did not identify the individuals that would have decontaminated his cell or provided him with supplies, the Court has reviewed the discovery requests submitted in support of Plaintiff's motion for summary judgment and Plaintiff never propounded any interrogatory requesting this information to any defendant.

While Plaintiff requested that Defendant Roberson respond to where the supplies were kept and who took the supplies to the ASU, the response was that the supplies are stored in various locations at the facility and Defendant did not recall who took the supplies to the ASU on any given day during the period in question.  (ECF No. 191-1 at 31-32, Defendant Roberson's Supplemental Responses to Plaintiff's Interrogatories, Set Two, Nos. 2 and 3.)  To the extent that Plaintiff wanted Defendants to identify who decontaminated his cell or who provided him with supplies, Plaintiff has not provided any discovery request showing that he propounded such an interrogatory to any defendant.  Plaintiff's objection to Defendant Hacker's declaration based on failure to supplement discovery responses is overruled.

Plaintiff argues that defense counsel has admitted the fact that the cell was not decontaminated, however argument in the pleadings filed in response to Plaintiff's motions for sanctions is not evidence to support the motion for summary judgment.  To the extent defense counsel has created a conflict due to his argument, the Court does not condone defense counsel's conduct, but Plaintiff's objection on this ground is overruled.

Finally, Plaintiff objects to the policy submitted as an exhibit on the grounds of lack of authentication and failure to provide the document during discovery.  Since Defendant's reliance on this policy shall not be considered, the Court declines to address Plaintiff's objections.

**V.    Plaintiff's Request for Judicial Notice**

Plaintiff requests that Court take judicial notice of the lethal effects of the chemical agent as stated in <u>Spain v. Procunier</u>, 600 F.2d 189 (9th Cir. 1979), <u>Headwaters Forest Defense v. County of Humbolt</u>, 240 F.3d 1185 (9th Cir. 2000), and <u>Williams v. Benjamin</u>, 77 F.3d 756 (4th Cir. 1996),

and two newspaper articles.  (Request for Judicial Notice 1, ECF No. 194.)  Defendants object that while the Court may take judicial notice of the legal principals, it may not take judicial notice of the facts contained in court documents.  (Defendants' Amended Response to Plaintiff's Separate Statement of Undisputed Facts 4, ECF No. 212.)

### A.    Court Decisions

Plaintiff is asking the Court to take judicial notice of the "lethal effects of the chemical agent."  Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc. 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  While a court may properly take notice of a doctrine or rule of law from a prior case, "a court may not take judicial notice of proceedings or records in another case so as to supply, without the presentation of evidence, facts essential to support a contention in a cause then before it."  M/V American Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983).

Therefore, while the Court may take judicial notice of the existence of unrelated court documents, it will not take judicial notice of the truth of the matters that are asserted in those documents.  This is a matter which the Court finds is not appropriate for judicial notice and Plaintiff's request for judicial notice should be denied.

### B.    Newspaper Articles

Plaintiff also requests the Court to take judicial notice of a newspaper article published in the Prison Legal News and an article from the Hanford Sentinel to show the lethal effects of the chemical agent.  (ECF No. 194 at 1.)  The facts contained within these articles are not "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Further, Plaintiff submits these articles for the truth of the matter asserted, and therefore, they are hearsay.  Fed. R. Evid. 801(c).  Plaintiff's motion for judicial notice of the

1    newspaper articles should be denied.

2    **VI.    Plaintiff's Motion to File a Supplemental Exhibit**

3            Plaintiff requests to supplement his motion for summary judgment with the video of his cell

4    extraction.  Plaintiff alleges that the video demonstrates that Defendants are attempting to perpetuate

5    a fraud on the Court by submitting the declaration of Defendant Hacker.[3]  (ECF No. 229.)

6    Defendants oppose the motion to supplement the motion for summary judgment as Plaintiff is

7    continuing to make unsubstantiated accusations against defense counsel and the evidence was

8    available to Plaintiff at the time he filed his motion and the submission is untimely.  (ECF No. 236.)

9    Plaintiff replies that Defendants' opposition is untimely and unsigned and should therefore not be

10   considered.  (ECF No. 236.)

11           In the interest of judicial economy and due to the discovery issues that have been raised in

12   this action, the Court will grant Plaintiff's request to supplement his motion for summary judgment

13   and the video shall be considered in deciding Plaintiff's motion for summary judgment.  The video

14   shows the attempts of a female and Defendant Hacker to contact Plaintiff and his refusal to respond.

15   Following Plaintiff's failure to respond, the extraction team approached Plaintiff's cell and inserted

16   the cell extraction device through the food port.  Based on the sound, Plaintiff's cell was

17   administered an approximate five second blast of the pepper spray.  After Plaintiff is removed from

18   his cell, the video shows Plaintiff being decontaminated in the shower.  Once Plaintiff is rehoused

19   in the cell the video ends.  The video does not show what occurred in Plaintiff's cell following his

20   extraction and while he was being decontaminated, and it does not contain any events that occurred

21   after Plaintiff was rehoused in his cell.

22   ///

23   ///

24

25           [3]In his reply, Plaintiff alleges that Defendants have agreed that his cell was not decontaminated.  The Court
     has reviewed all the exhibits submitted by Plaintiff with his motion for summary judgment and, while the individual
26   defendants have admitted they did not decontaminate Plaintiff's cell and the supervisory defendants stated that they
     did not get involved in post extraction procedures, no defendant has stated that Plaintiff's cell was not
27   decontaminated or that he was not provided with supplies following the extraction.   To the extent that Plaintiff is
     claiming that no other prison officials were involved in post extraction procedures, there is no evidence supporting
28   such a claim before the Court.

**VII.    Plaintiff's Motion for Summary Judgment**

    **A.    Statement of Undisputed Facts[4]**

1.    On February 28, 2007, Plaintiff was housed at the California Substance Abuse Treat Facility's ("CSATF") Administrative Segregation Unit ("ASU").

2.    On this date, Plaintiff and 43 inmates engaged in peaceful, non violent protest to bring attention to the abuses of prison officials and inhumane conditions.

3.    All inmates, including Plaintiff were secured in small six by nine cells.

4.    The protestors covered up their cell door "windows" with paper and refused to relinquish their plastic food trays.

5.    There were other unobstructed views into Plaintiff's cell.

6.    Defendant Reynoso informed Defendant Hutchins of the situation and obtained her authorization to conduct preplanned cell extractions.

7.    Defendants Hacker and Roberson then summoned Defendants Munoz, Clausing, Omos, Paz, and Morse, and Officer Daley to the ASU, to conduct extractions of all inmates, including Plaintiff.

8.    It is the California Department of Corrections and Rehabilitations ("CDCR") practice and policy, for supervisory officials to address inmate complaints, and to "verbally" resolve protests, instead of authorizing the "use of force."

9.    Defendants Hutchins and Reynoso authorized and ordered their subordinates to use force to quell the protest and retrieve the food trays.

10.    Defendants Hutchins, Hacker, Roberson, and Reynoso authorized and ordered their subordinates to use the "X10 Barracade Removal Devise" ("X10BRD").

11.    Plaintiffs vent was turned off before the extraction.

12.    At 10:30 or 11:00 am, Defendants Hutchins, Reynoso, Hacker, Roberson, Munoz, Paz, Morse, Clausing, and Omos, and Officers Perez, and Daley assembled outside the ASU and were given their assignments by Defendants Hutchins, Reynoso, Hacker, and Roberson.

---

[4]The facts which Plaintiff included in his undisputed facts, but which are disputed by Defendants, are not included in the statement of undisputed facts.

13.   Defendant Munoz was assigned as "team leader," Defendants Paz and Morse to "decontamination and escorts," Defendant Omos to "sheild," Defendant Clausing to "baton," Officer Daley to "handcuffs," and Officer Perez to "leg irons."

14.   Defendants Hutchins, Reynoso, Hacker, and Roberson had an obligation to assign someone to decontaminate the cells, and provide life's basic necessities.

15.   Every inmate (including "Zayas" who volunteered his tray, uncovered his window, and was not extracted) had their basic necessities removed from their cells.

16.   At about 4:52 p.m., Defendants Munoz, Paz, Morse, Omos, and Clausing, and Officers Daley, and Perez, and their supervisors; Defendants Reynoso, Hacker, and Roberson approached Plaintiff's cell (wearing chemical protective suits) to perform the final extraction. Reynoso, Hacker, and Roberson ordered their subordinates to extract Plaintiff.

17.   Defendants Munoz, Clausing, and Omos inserted the X10BRD into Plaintiff's cell and discharged it.

18.   Defendants Munoz, Clausing, and Omos are trained on the use of "X10BRD" and the use of force policies.  The use of force policy was read to them hours before Plaintiff's extraction.

19.   Plaintiff was not doing anything different than the other inmates.

20.   Defendants Reynoso, Hacker, Roberson, Paz, and Morse and Officers Daley, and Perez were present when the pepper spray was administered.

21.   The chemicals hit Plaintiff and drenched his cell.

22.   Plaintiff instantly began choking gagging and experiencing unbearable lung and chest pain and an overwhelming burning sensation to his eyes, skin and genitals.

23.   Plaintiff immediately uncovered his cell door window and voluntarily removed his clothing, so he could be immediately searched, restrained, and removed.  Plaintiff was in obvious pain.

24.   Defendants Reynoso, Hacker, Roberson, Paz, and Morse, and Officer Perez stood by and did not intervene.

25.   Although Plaintiff was in pain, choking and gagging, he complied and offered to be cuffed and removed.

26. Next Defendants Munoz, Clausing, and Omos, and Officer Daley asked that Plaintiff show them his genitals, underarms and feet slowly, even though Plaintiff's unclothed body was "in plain sight."

27. Plaintiff was then asked to show them the bottom of his feet. Plaintiff picked up his left foot, but Defendant Munoz said, "No, I said right foot not left foot."

28. Defendants Munoz, Clausing, and Omos, and Officer Daley knew that it made no difference which foot Plaintiff lifted first because both feet were in plain sight.

29. Prison policies establish that there is no order, nor does it make a difference which foot an inmate lifts first, during an unclothed body inspection.

30. Once Officer Daley finally applied "cuffs" on Plaintiff, he was removed from the cell.

31. As leg irons were applied, Defendants Reynoso, Hacker, Roberson, Paz, and Morse stood by but did not intervene.

32. Plaintiff was wearing contaminated underwear and was turned over to the decontamination team, Defendants Paz and Morse.

33. Defendants Paz and Morse ran water over Plaintiff's head for a few minutes.

34. Defendants Reynoso, Hacker, Roberson, Paz, Morse, Munoz, Clausing, and Omos receive training on the use and effects of chemical agents.

35. Defendants knew they had an obligation to have Plaintiff decontaminated and examined following chemical inhalation and exposure.

36  While Plaintiff knelt in front of Officers Langer and Henrichsen – Defendants Munoz, Omos, and Clausing, and Officers Perez, and Daley followed Defendants Hutchins, Reynoso, Hacker, and Roberson's previous order and removed Plaintiff's toothbrush, toothpaste, hygiene (soap, shampoo), toilet paper, all clothing, towels, bedding, mattress, sheets, socks, shoes, sandals and cleaning supplies ("life's basic necessities") from Plaintiff's cell.

37. Defendants Reynoso, Hutchins, Hacker, and Roberson had their subordinates remove all of life's basic necessities from all the protestor's cells, including one inmate who had stopped protesting and complied with orders.

38. After Plaintiff was placed back in his cell, he began choking, gagging and experiencing

1    overwhelming pain to his skin, genitals, eyes, chest and lungs.

2   39.    Defendants Hutchins, Reynoso, Hacker, and Roberson were the supervisors on the scene, and

3    were responsible for (A) Plaintiff health and safety and (B) they were in charge of the ASU.

### B.    Plaintiff's Position

Plaintiff argues that the objective component of the Eighth Amendment violation is established because the chemical caused him to choke, gag, and experience overwhelming pain to his chest, lungs, skin, eyes, and genitals, and the warning labels on the chemicals show they can cause intense pain and even death.[5] (Motion for Summary Judgment 11, ECF No. 191.) Defendants Munoz, Clausing, and Olmos used a seven to eight second blast of pepper spray to extract him from his cell causing him pain. (Id. at 12.) The amount of chemical used was greater than necessary and therefore was used for the sole purpose of causing pain.[6] The other inmates were only subjected to a one to three second burst of pepper spray, but Plaintiff was subjected to a seven to eight second burst which far exceeded the amount needed or recommended by the manufacturer. (Id. at 13.) Plaintiff argues the use of force could have been tempered by subjecting him to a one to three second burst of pepper spray and then allowing him an opportunity to comply before subjecting him to additional pepper spray. (Id. at 13-14.) Plaintiff suffered overwhelming pain to his eyes, skin, genitals, chest and lungs and may have been permanently injured. Plaintiff argues there are no material issues of fact and summary judgment must be entered. (Id. at 14.)

Plaintiff argues that after the seven to eight second blast of pepper spray, his cell was not

---

[5]Plaintiff continues to argue that the decision to use pepper spray was excessive use of force because the inmates were involved in a peaceful protest and there was no threat of violence. The parties do not dispute that 44 inmates had covered the windows of their cells, were refusing to return their food trays, and were refusing to come out of their cells. Although Plaintiff claims this was a peaceful protest, the inmates were refusing to comply with the orders of correctional officers. The right to peaceful protest does not extend to a right to refuse to comply with the lawful orders of correctional officials. In this instance, the decision to use pepper spray to address the situation confronting Defendants does not state a claim for excessive force and has been dismissed from this action. The sole issue for the excessive force claim is whether Defendants Munoz, Clausing, and Olmos used an excessive amount of pepper spray in extracting Plaintiff from his cell. All other arguments set forth by Plaintiff shall be disregarded.

[6]To the extent that Plaintiff submits his own testimony regarding the pepper spray, cell extraction device, and procedures for decontamination, Plaintiff is not qualified as an expert in these areas; and his arguments contain nonadmissible hearsay. Fed. R. Civ. P. 801(c). Affidavits or declarations used in support of or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

decontaminated prior to him being rehoused in the cell with the ventilation system turned off and without any means to decontaminate the cell.[7] As a result of the fumes and vapors Plaintiff suffered overwhelming pain and burning to his chest, lungs, eyes, skin, and genitals and may have been permanently injured. (Id. at 15.) Defendants Hutchins, Hacker, Reynoso, and Roberson were the supervisors responsible for assigning someone to decontaminate his cell and provide him with basic necessities and they intentionally failed to do so. (Id. at 15-16.) Defendants are regularly trained on the harmful effects of the chemical agents, knew that the cell was not decontaminated and placed Plaintiff back in the cell without any way to decontaminate the cell or himself. (Id. at 16.) The officers used protective suits to protect themselves from the effects of the chemicals and that establishes that Plaintiff would be subjected to pain and injured once rehoused in the cell. Defendants were aware that Plaintiff was suffering when he returned to his cell because they had seen him gagging and choking from the effects of the chemical. (Id. at 17.) Defendants Hutchins, Hacker, Reynoso, and Roberson were responsible for Plaintiff's health and safety and had an obligation to ensure that the chemical agents were disposed of and ensure Plaintiff was housed in safe and sanitary conditions. (Id. at 18.) Plaintiff argues that it would be obvious to Defendants Hutchins, Reynoso, Hacker, and Roberson that he would need a change of clothing, hygiene supplies, and supplies for cleaning his cell to rid it of the chemicals. (Id. at 21.)

   C.   **Defendants' Position**

   Defendants argue that because Plaintiff was refusing to comply with orders, administering a single blast of pepper spray during Plaintiff's cell extraction was within the policy and procedure guideline of the CDCR. Following his cell extraction, Plaintiff was decontaminated in the showers and was issued a fresh pair of boxers and returned to his decontaminated cell. (Am. Opp. to Motion for Summary Judgment 10, ECF No. 209.) Plaintiff was medically cleared and was found to be experiencing the normal effects of exposure to pepper spray. The decontamination of Plaintiff's cell

---

[7] Plaintiff argues that he was housed in the cell without being provided with any necessities for ten days following this incident, however Plaintiff failed to link any defendant to this ten day period and this claim is not proceeding in this action. The claim proceeding here is that Defendants Hutchins, Hacker, Reynoso, and Roberson ordered all Plaintiff's property be removed from his cell and that he be placed back in the contaminated cell without any means of decontaminating the cell. All arguments regarding the claims not proceeding in this action shall be disregarded.

1   was not videotaped, but standard procedure was followed by terminating the video recording
2   following the removal of the inmate from the cell.  (Id. at 11.)

3       Defendants argue that the administration of the single dose of pepper spray was necessary
4   because Plaintiff refused to comply with the orders to return his meal tray and clear the obstruction
5   to the windows of his cell.  The administration of the pepper spray was within CDCR policy and
6   Defendants took appropriate action to restore order in the housing unit.  A triable issue exists as to
7   whether the single dose of pepper spray was excessive.  (Id. at 12.)  Plaintiff has failed to
8   demonstrate that the pepper spray was applied sadistically and maliciously for the very purpose of
9   causing harm.  (Id. at 13.)  In this instance, Defendants used controlled force as part of a controlled
10   force plan which was within the rules of conduct for correctional officers.  The motion for summary
11   judgment on the excessive force claim should be denied.

12       Defendants also argue that Plaintiff has failed to demonstrate that he had a serious medical
13   need that was not adequately addressed by prison officials.  Whether Plaintiff suffered harmful
14   effects from the pepper spray, inadequacy of cell ventilation, availability of showers and medical
15   care are issues that must be decided by the trier of fact.  (Id. at 15.)  Further, whether Defendants
16   followed the policies, rules, and regulations is a mixed issue of law and fact that is not proper for
17   summary judgment.  (Id. at 16.)  Plaintiff has failed to show that there was an Eighth Amendment
18   violation based upon prison policies.  (Id. at 17.)

19       Finally, Defendants argue that a resolution of the factual issues in this action may relieve
20   Defendants from liability as they would be entitled to qualified immunity.  (Id. at 18.)

21       **D.**    **Plaintiff's Reply**

22       Plaintiff replies that the fact that Defendant Hacker was not aware of the reason that the
23   inmates were protesting does not establish that Defendants Munoz, Clausing, and Olmos were not
24   aware of the reason.  Further, Plaintiff asserts that the failure of Defendants Munoz, Clausing, and
25   Olmos to file a declaration compels an adverse ruling against them.  Plaintiff admits that were
26   Defendant Hacker's contention that only a single burst of pepper spray was used true, there would
27   be no dispute.  (Plaintiff's Reply to Defendants' Opposition and Amended Opposition 7, ECF No.
28   227.)  However, Plaintiff contends that the video establishes that Plaintiff's cell was administered

a nine second blast of pepper spray. (Id. at 7-8.)

Plaintiff argues that his lack of injuries is irrelevant because the fact that he was decontaminated after the incident was rendered useless once he was rehoused in the contaminated cell. (Id. at 8.) Plaintiff further alleges that Defendants cannot rely on the use of force plan because that plan was not in existence at the time of the incident. (Id. at 9.)

Plaintiff continues to argue that Defendant Hacker's declaration is a sham affidavit that should not be considered in resolving the motion for summary judgment. (Id. at 11-13.) Plaintiff argues that the undisputed evidence shows that he was returned to a contaminated cell and was not provided with any needed items to decontaminate himself or his cell. (Id. at 14.) Defendants were in charge at the time of the incident and had a duty to ensure that all chemicals were disposed of and Plaintiff was provided with necessities on the night of the incident. (Id. at 15.) Plaintiff argues the failure to follow their own policies cannot be deemed anything but deliberate indifference.[8] (Id. at 17.)

**E.    Discussion**

This action is proceeding on the claims that Defendants used excessive force and subjected Plaintiff to conditions of confinement in violation of the Eighth Amendment. Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000). To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In order to be held liable each defendant must have personally participated in the deprivation of the plaintiff's rights. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

///

---

[8]Plaintiff further argues that Defendants are time barred from arguing qualified immunity and the court has previously decided this matter so it is barred by res judicata. The denial of qualified immunity was due to the factual allegations made by Plaintiff at the pleading stage. (ECF No1 36 at 11:6-12:19.) Due to the factual disputes qualified immunity was not granted, however should those factual disputes resolve in Defendants favor, the issue of qualified immunity for those claims that survive summary judgment could be appropriately addressed in this action.

1

**1.**     **Excessive Force**

2

**a.**     **Legal Standard**

3

When a prison official stands accused of using excessive physical force in violation of the

4

cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the

5

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

6

sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing

7

Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).   In determining whether the use of force was

8

wanton and unnecessary, it is proper to consider factors such as the need for application of force, the

9

relationship between the need and the amount of force used, the threat reasonably perceived by the

10

responsible officials, and any efforts made to temper the severity of the forceful response. Hudson,

11

503 U.S. at 7.

12

A prison official's use of force to maliciously and sadistically cause harm violates the

13

contemporary standards of decency.  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010).  However,

14

"[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." Gaddy, 130

15

S. Ct. at 1179 (quoting Hudson, 503 U.S. at 9).  Factors that can be considered are "the need for the

16

application of force, the relationship between the need and the amount of force that was used, [and]

17

the extent of injury inflicted." Whitley, 475 U.S. at 321;  Marquez v. Gutierrez, 322 F.3d 689, 692

18

(9th Cir. 2003).  Although the extent of the injury is relevant, the inmate does not need to sustain

19

serious injury. Hudson, 503 U.S. at 7; Wilkins, 130 S. Ct. at 1178-79.  The Eighth Amendment's

20

prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition

21

de minimus uses of physical force. Hudson, 503 U.S. at 9-10.

22

**b.**     **Need for Application of Force**

23

While Plaintiff argues that there was no need for the use of force, it is clear that some

24

measure of force was required given the circumstances confronting prison officials.  A total of 44

25

inmates in the ASU, including Plaintiff, had covered their cell door "windows" with paper and

26

refused to relinquish food trays.  (UF 1, 2, 4.)  The inmates refused to comply with the orders of the

27

correctional officers.  (ECF No. 210 at ¶ 4.)

28

Plaintiff argues that he was not a threat and therefore it was not necessary to use force to

extract him from his cell.  Plaintiff claims that officers could have determined this by observing him through the roof top window in his cell.  However, prison officials are not required to climb up on the roof of the building and look through the roof windows to ensure that inmates are not engaged in any wrongful activity.  Prison administrators are charged with the responsibility of maintaining the safety of correctional and administrative staff and visitors as well as an obligation to take reasonable measures to protect the safety of inmates.  Whitley, 475 U.S. at 320.  In this regard, prison officials are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security."  Whitley, 475 U.S. at 321-22 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).  Requiring inmates to keep their cell windows uncovered and return their food trays clearly falls within this wide ranging discretion.

Further, Plaintiff's argument that no force was necessary because the protest was peaceful and the inmates would not become violent if prison officials had addressed their demands is not persuasive.  Correctional officials are not required to concede to the demands of inmates or wait them out in order to avoid the use of force.  Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) ("experience and common sense establish that a prison cannot be operated in such a way").  In this instance, some use of force was required to gain compliance of the inmates and restore the security of the institution.

### c.        Efforts to Temper Severity of Forceful Response

Prison officials attempted to gain compliance of Plaintiff prior to using force.  A clinical social worker approached Plaintiff's cell and attempted to make contact with him through the cell door.  (ECF No. 210 at ¶ 8; Video of Cell Extraction, ECF No. 229.)  After the social worker received no response, Defendant Hacker approached Plaintiff's cell and ordered him to comply with the correctional officers and warned him that force wold be used if he failed to comply.  (ECF No. 210 at ¶¶ 9, 11; Video of Cell Extraction 5:56:58-57:52.)

Prison officials made reasonable efforts to obtain Plaintiff's compliance  prior to using any force on Plaintiff.  It was only after Plaintiff refused to comply with the orders of correctional officers, did not respond to the requests of the social worker, and failed to respond to Defendant

Hacker's warning that the pepper spray was administered. Given that Plaintiff had essentially barricaded himself in his cell, the other option would be for correctional officers to physically enter Plaintiff's cell to extract him, which would have resulted in a physical confrontation with Plaintiff, and could have resulted in serious physical injury to Plaintiff or the officers. When compared to other forms of force, the decision to use pepper spray to extract Plaintiff from his cell was a tempered use of force. Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000).

Further, Defendants made efforts to temper the use of pepper spray in that Plaintiff was immediately taken to be decontaminated and was placed in the shower with running water for several minutes. Following the decontamination, Plaintiff was evaluated by medical personnel.

### d.     Relationship Between Need and Amount of Force Used

Having found that force was necessary, the real issue here is whether an excessive amount of pepper spray was used to extract Plaintiff from his cell. When Plaintiff refused to comply with the orders to remove the paper from the cell window and return his tray, the cell extraction device was inserted through the food port and a single burst of pepper spray was administered. (ECF No. 210 at ¶ 12; ECF No. 229.)

After giving warning that pepper spray would be used, the use of a small amount of pepper spray to control a recalcitrant inmates has been found not to violate the Eighth Amendment. See Clement v. Gomez, 298 F.3d 898, 903-4 (9th Cir. 2002) (two five second bursts of pepper spray to break up inmate fight not excessive force in violation of Eighth Amendment); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (use of small amounts of tear gas after adequate warning may be a necessary prison technique where an inmate refuses to move from a cell); Jones, 207 F.3d at 496 (holding correctional officer's use of pepper spray was tempered response when used to subdue a recalcitrant prisoner who was refusing to work and disobeying orders); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) (holding use of mace to obtain compliance of recalcitrant inmate was reasonable response whether the inmate is locked in a cell or not); Robins v. Lamarque, No. 3:03-cv-00797-JSW (PR), No. 5:03-cv-007970-JSW (PR), 2011 WL 6181435, at *5 (N.D.Cal. Dec. 13, 2011) (two blasts of pepper spray and smoke grenades used to extract inmates from cell did not violate Eighth Amendment).

Here, Plaintiff had notice, not only by the efforts of correctional officers to contact him, but by the cell extractions that proceeded in the housing unit during the several hours prior to Plaintiff's cell extraction.  Plaintiff asserts that a seven to nine second burst of pepper spray was administered which was more than twice that used to extract the other inmates.[9]  Plaintiff concedes that if only a single blast was used the defendants would not have used excessive force, but argues that this exceeds the single blast that would be recommended.  However, nowhere in the record is a single blast defined as a specific period of time.[10]  Defendants assert that Plaintiff was administered the same single blast of pepper spray that was administered to other inmates.  The video of the cell extraction shows that the cell extraction device was inserted into Plaintiff's cell thorough the food port and, based upon the time stamp on the video, from the sound of the spray it appears an approximate five second blast of pepper spray was administered to Plaintiff's cell.  (Video of Cell Extraction 5:58:29-5:58-40.)  A factual dispute exists as to whether the amount of pepper spray used to extract Plaintiff was an excessive use of force.

### e.   Malicious or Sadistic or To Restore Order

Finally, Plaintiff has failed to show that Defendants Munoz, Clausing, and Omos administered the pepper spray for any purpose other than to restore order.  Plaintiff argues that Defendants Munoz, Clausing, and Omos knew that the inmates were protesting and complaining about the abuses of prison officials and inhumane conditions.  Even if the Defendants were aware of the reason the inmates had covered their windows and were refusing to return their trays, that is insufficient to conclude the use of pepper spray was applied maliciously and sadistically to inflict pain.  It is undisputed that Plaintiff had refused to uncover the window of his cell or return his dinner tray and did not respond to the numerous requests of prison officials to comply with orders.

///

[9] Plaintiff's assertion that the amount of pepper spray administered far exceeded the lethal dose is belied by the fact that he is still alive.  (ECF No. 191 at 13.)

[10] While Plaintiff states that the manufacturer recommends administering a one second burst, to the extent that Plaintiff would be able to lay a foundation and admit the manufacturers instructions, the manual states "[t]he length of the spray should be determined by the officer depending on standard operating procedures."  (ECF No. 191-1 at 110.)

**f.    Conclusion**

A genuine issue of material fact does exist as to whether the amount of pepper spray used by Defendants Munoz, Clausing, and Omos was applied sadistically or maliciously to cause harm or for the purpose of restoring order . Matsushita Elec. Indus. Co., 475 U.S. at 586.  Accordingly, Plaintiff's motion for summary adjudication on the excessive force claim against Defendants Munoz, Clausing, and Omos should be denied.

**2.    Conditions of Confinement**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in

doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

Deliberate indifference requires a showing that prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." Thomas, 611 F.3d at 1150 (quoting Farmer, 511 U.S. at 844. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim." Johnson, 217 F.3d at 731.

Plaintiff alleges that, prior to rehousing him in his cell, Defendants did not decontaminate his cell. Plaintiff was placed back in the cell within five minutes of the pepper spray being used. Plaintiff states the chemicals remained in his cell and rained down upon him causing him to begin choking, gagging, and experiencing overwhelming pain to his skin, genitals, eyes, chest, and lungs. (Plaintiff's Dec. ¶ 30, ECF No. 193.) The chemicals eventually dried to a dust and he continued to experience difficulty breathing and extreme pain for ten days. (Id. at ¶¶ 33-36.)

Plaintiff claims that the video of the cell extraction proves that the defendants were deliberately indifferent because it does not show any cleaning supplies by his cell; it does not sound like the cell was being decontaminated; and the video catches a glimpse of the floor of the cell which was smeared with the chemical agent. The video does not contain any images of Plaintiff's cell from the time that he was removed until he was rehoused in the cell. While Plaintiff is in the shower being decontamined, the sound of the shower masks any sound of what was occurring in the housing unit. (Video of Cell Extraction 6:01:04-6:01:56.) Once Plaintiff is removed from the shower, there are sounds of unidentifiable activity within the housing unit.

After the medical team addresses Plaintiff, Plaintiff is kept kneeling on the floor while the escorting officers observe activity down the hallway toward Plaintiff's cell. (Id. at 6:03:36-6:04:38.) The officer escorting Plaintiff acknowledges that it is time to move; and Plaintiff is stood up as they begin to move toward his cell. (Id. at 6:04:39-40.)   While it is unclear what was occurring in Plaintiff's cell, it is clear from the video that the officers were waiting to take Plaintiff back to his cell until his cell was ready for him to be rehoused in it.

When Plaintiff is placed back in the cell, the interior of the cell is not visible. (Id. at 6:04:43-6:05:08.)  Although Plaintiff claims that the video shows that the floor of the cell was smeared with chemical agent, the brief glimpse of the doorway of the cell does not clearly show anything identifiable on the floor of the cell.  The video creates ambiguity as to whether Plaintiff's cell was decontaminated prior to Plaintiff being rehoused in the cell and raises triable issues of fact.  It is for a jury to decide, based upon a review of the video coupled with appropriate testimony, whether plaintiff's cell was decontaminated prior to him being rehoused in the cell.

Plaintiff argues that the video of the cell extraction proves that no one gave him a fresh change of clothing or any supplies to decontaminate the cell or himself.  (ECF No. 229 at 4.)  However, the video of the cell extraction stops once Plaintiff is placed back in his cell and there is no record of what occurred thereafter.  In the background of the sequence in which Plaintiff is being placed back in his cell, the video depicts a prison official with a cart that appears to contain supplies in the hallway just down from Plaintiff's cell. (Video of Cell Extraction 6:04:49-6:05:09.)  This is sufficient to raise a triable issue as to whether Plaintiff received any supplies following the cell extraction.

Accordingly, the Court finds that genuine issues of material fact exist as to whether Plaintiff's cell was decontaminated and if he received any supplies following the cell extraction.  The Court recommends that Plaintiff's motion for  summary judgment be denied.  Matsushita Elec. Indus. Co., 475 U.S. at 586.

## VIII.   Conclusion and Recommendation

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.   Plaintiff's request for judicial notice be DENIED;

2.   Plaintiff's request to supplement his motion for summary judgment be GRANTED; and

3.   Plaintiff's motion for summary judgment be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

     IT IS SO ORDERED.

**Dated:**   **November 19, 2012**          **/s/ Barbara A. McAuliffe**
                              UNITED STATES MAGISTRATE JUDGE